JONATHAN M. PROMAN, ESQ.
30 WALL STREET, EIGHTH FLOOR
NEW YORK, NEW YORK 10005
(917) 524-7566
JPROMAN@PROMANLAW.COM

February 4, 2020

**Via ECF and Facsimile**

Hon. Nelson S. Román
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

Re: *Ohr Somayach/Joseph Tanenbaum Educational Center v. Farleigh International Limited*
   **Civil Action No. 19-11730**
   **Request For Pre-Motion Conference Pursuant to Individual Practices § 3(A)(ii)**

Dear Judge Román:

On behalf of the plaintiff in the above declaratory judgment action, Ohr Somayach/Joseph Tanenbaum Educational Center, pursuant to Your Honor's Individual Practices in Civil Cases § 3(A)(ii), please accept this pre-motion conference request for Ohr Somayach's anticipated motion to dismiss the counterclaims pursuant to FED. R. CIV. P. 12(b)(6).

## I.     Overview of the Pleadings

From August 1, 1989 through as recently as April 11, 2014, Evgeny (Eugene) Shvidler -- a Russian-American billionaire -- caused donations to be made to Ohr Somayach—a not-for-profit, New York corporation located in Monsey, New York.  Mr. Shvidler's fortune is believed to derive from the Russian oil producer Sibneft, and its acquisition by Gazprom, owed by the Russian government.  Established during 1977, well before Mr. Shvidler's donations -- indeed, Mr. Shvidler was a teenager in the Soviet Union when Ohr Somayach was founded -- Ohr Somayach operates educational, enrichment, and related programs.  Mr. Shvidler causing donations to Ohr Somayach exceeding $6.4 million is undisputed.  Most of those donations (approximately $6,090,000) were made from August 1, 2005 through April 22, 2008.  It is further undisputed that the donations funded building of the Beit Shvidler Conference Center (translating roughly to Shvidler Family Conference Center), located on Ohr Somayach's campus.

## II.     Alleged Restrictions Upon Ohr Somayach

The conference center's use is allegedly limited to, in the counterclaim's words, "specific and designated … purposes."  A demand letter received from the counterclaimant's attorney indicated that such purposes are reportedly kiruv (Hebrew for "bringing close"); namely, encouraging secular Jews to turn to orthodox life.  Ohr Somayach's not-profit purposes, however, are satisfied regardless of whether it targets students with a secular or non-secular background.

The alleged restrictions are averred to be parol. Ohr Somayach had requested prior to this action's commencement that the counterclaimant produce written agreements that it avers affect the donations. Farleigh has produced just one document, entitled "deed of gift", dated July 20, 2005.

The deed of gift states that the donations are to be used "in accordance with [Ohr Somayach's] non-profit purposes." Those broad words are satisfied regardless of the manner in which the counterclaimant perceives the student body.

The deed of gift also states, "The Donor assigns and transfers to the Recipient by way of gift the Donation <u>absolutely</u>." (Emphasis added). Absolute transfer is inconsistent with an alleged right to retake a gift more than a decade later.

### III.   <u>The Statute of Frauds and Statute of Limitations Applies</u>

Pursuant to GEN. OBLIGS. LAW § 5-703(1) -- New York's pertinent statute of frauds -- a restriction upon real property must be in writing. By itself, this eviscerates any parol restrictions concerning the $6.4 million gifts.

The counterclaims' assertion that Ohr Somayach cannot mortgage its own property fares no better. Not only is that parol restriction barred by the statute of frauds, the alleged mortgages were made by Ohr Somayach during "2006" and "2009." The six-year statute of limitations to sue for breach of contract because of those mortgages has long expired. CPLR 213(2).

The Court should also be aware that Ohr Somayach's campus includes dozens of tax map lots. The conference center shares lot number 50 with three other buildings. A mortgagee could be adequately collateralized without the need to borrow against the value of the conference center. The counterclaims, however, would purport to not only bar Ohr Somayach from borrowing against the conference center, but from borrowing against other campus buildings.

### IV.   <u>The Counterclaimant Lacks Standing and Its Assertions are Non-Justiciable</u>

Because the donations that are the subject of the counterclaims have been consumed by building the conference center more than a decade ago, the counterclaimant's standing as to Ohr Somayach is no different than any other member of the public. A person is free to assert opinion that a not-for-profit corporation should be operated differently but, by statute, only the attorney general has standing to litigate that assertion. EPTL § 8-1.1 (f) ("The <u>attorney general</u> shall represent the beneficiaries of … dispositions for religious, charitable, educational or benevolent purposes and it shall be his duty to enforce the rights of such beneficiaries .....") (emphasis added).

Even if there were a written document limiting the conference center to the counterclaims' vision of kiruv, whether Ohr Somayach has properly engaged in kiruv or other Jewish causes is non-justiciable as a matter of law. *Congregation Yetev Lev D'Satmar, Inc. v. Kahana*, 9 N.Y.3d 282, 287–88, 879 N.E.2d 1282, 1285–86, 849 N.Y.S.2d 463, 466–67 (2007) (religious disputes cannot be ruled upon by courts because doing so would run afoul of the First Amendment).

### V. The Fiduciary Duty and Accounting Counterclaims Should be Dismissed

New York law disposes of the breach of fiduciary duty and accounting counterclaims as well as a matter of law. A deed of gift does not create a fiduciary relationship or claim. *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, at *15 (S.D.N.Y. Dec. 22, 2003) ("A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.") (citation and internal quotations omitted). Absent a fiduciary relationship, a party has no right to an accounting. *Leveraged Leasing Admin. Corp. v PacifiCorp Capital, Inc.*, 87 F3d 44, 49 (2d Cir. 1996) ("In order to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with the defendant.") (citation omitted).

### VI. The Donations Have Been Exhausted

Mr. Shvidler gifts were indisputably used to construct the conference center more than ten years ago. As such, those funds no longer exist. The deed of gift even states that transfer of the funds "shall" be completed by the "end of the year 2005", thereby buttressing that the gift was to erect a conference center, and not to control Ohr Somayach's operations indefinitely into the future.

### VII. Pertinent Background

The Court should be aware that there recently has been a trusteeship change at Ohr Somayach following submission of certain disputes to arbitration. It is believed that a trustee who is no longer affiliated with Ohr Somayach following arbitration has caused Mr. Shvidler to demand return of donations used to build the conference center so many years ago. For purposes of a pre-motion conference request, the determinative point is that as a matter of law neither a former trustee nor a former donor may dictate the manner in which a not-for-profit religious corporation operates.

\* \* \*

New York law applies because (i) Ohr Somayach is a New York not-for-profit corporation; (ii) the conference center is located in Monsey, New York; and (iii) there is no relationship whatsoever between Ohr Somayach and England. The deed of gift's purported invocation of the laws of England thus is inapplicable.

For the above reasons, Ohr Somayach requests a pre-motion conference for its anticipated motion to dismiss the counterclaims, and appreciates the Court's time and attention.

Respectfully submitted,

*/s/ Jonathan M. Proman*

Jonathan M. Proman

cc (via ECF):

All counsel of record