UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

OHR SOMAYACH/JOSEPH TANENBAUM
EDUCATIONAL CENTER,

                Plaintiff/Counterclaim Defendant,

v.

FARLIEGH INTERNATIONAL LIMITED,

                Defendant/Counterclaim Plaintiff.

------------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

19-CV-11730 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Plaintiff Ohr Samayach/Joseph Tenenbaum Educational Center ("Plaintiff") commenced this action against Defendant Farleigh International Limited ("Defendant") on December 23, 2019. (Doc. 1, "Compl."). Plaintiff, a religious not-for-profit organization, seeks a declaratory judgment from this Court that donations made by Defendant to Plaintiff totaling approximately $6,650,000 are irrevocable and that Defendant has no rights associated with these donations. (*Id.* ¶¶ 1–4). On January 14, 2020, Defendant filed an Answer and asserted three counterclaims against Plaintiff. (Doc. 8, "Counterclaims"). Defendant asserts Counterclaims for (1) breach of contract, (2) breach of fiduciary duty, and (3) an accounting. (*Id.* ¶¶ 22–35).

      By motion dated May 22, 2020, Plaintiff moved to dismiss Defendant's Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 29; Doc. 30, "Pl. Br.").[1] On June 5, 2020, Defendant

---

[1] Plaintiff's request that the Court convert its motion to dismiss into a motion for summary judgment is denied. As is evident from the parties' briefs, and the Court's analysis of the parties' arguments herein, there are multiple issues of disputed fact and therefore it would be improper to convert this motion to dismiss to a motion for summary judgment. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) ("Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (citing Fed. R. Civ. P. 56(a))).

filed its opposition to Plaintiff's motion (Doc. 33, "Def. Br."),[2] and on June 12, 2020, Plaintiff filed its reply (Doc. 35, "Pl. Reply").

For the reasons set forth below the court GRANTS Plaintiff's motion to dismiss in part.

## BACKGROUND

The facts, as recited below, are taken from the Counterclaims. Plaintiff, a not-for-profit organization located in Monsey, New York, was established in 1979 as a branch of the Jerusalem-based Ohr Somayach Institutions network. (Counterclaims ¶ 5). The organization offers an academic program to "develop intellectually sophisticated Talmudic scholars who can make a significant contribution to their communities both as teachers and experts in Jewish law." (*Id*.).

Defendant alleges that in 2005 it made a "restricted gift to [Plaintiff] for the purpose of building a Jewish educational center that would be designated for specific educational purposes." (*Id*. ¶ 6). On July 20, 2005 a deed of gift (the "Deed") was executed providing that Defendant would make a gift of $250,000. (*Id*. ¶ 7). The Deed states, in relevant part:

1.1   The Donor wishes to provide financial assistance to the Recipient to support the Recipient's non-profit purposes.

1.2   The Recipient is willing to accept the gift and to utilize the gift in accordance with its non-profit purposes.

1.3   The Donor wishes to transfer and assign by way gift[3] to the Recipient the aggregate total amount of US $250,000 (Two Hundred Fifty Thousand 00/00 US Dollars) (the "Donation"). . . .

2.1   The Donor assigns and transfers to the Recipient by way of gift the Donation absolutely. The Recipient shall apply the Donation in accordance with its non-profit purposes. . . .

4.2   The Recipient shall provide to the Donor, basing on its request, an annually analysis of the manner in which the Donation or any part thereof have been applied.

4.3   In the event the Donation are used not for their designated purpose, the Company shall have the right to suspend the transfer of Donation under this agreement until the relations between the Parties have been settled and/or request the return of any Donation transferred earlier.

---

[2] Defendant's request for oral argument is denied.
[3] There are multiple typographical errors in the Deed. (*See generally* Deed).

(Doc. 31-3, the "Deed").[4]

Defendants allege that in addition to the written terms the Deed, the parties' agreement also encompassed oral terms including, "(1) that the restricted gift be used to construct an educational facility to be used in accordance with specific and designated non-profit religious educational purposes;[5] (2) that the resulting facility would never be mortgaged or otherwise encumbered; and (3) that the resulting facility would be named in honor of Mr. Shvidler's family." (Counterclaims ¶ 9). The Beit Shvidler Conference Center (the "Shvidler Center") was thereafter constructed and named in honor of Eugene Shvidler, an individual associated with Defendant. (*Id.* ¶ 10). Subsequently, Defendant made additional gifts to Plaintiff totaling "at least" $6,650,000 (the "Gifts"). (*Id.* ¶ 11). Defendant asserts that "[a]ll the Restricted Gifts were made pursuant to the same [written] terms and with the same [additional oral] understanding as the initial transfer made pursuant to the Deed." (*Id.*).

Defendant alleges that the Shvidler Center has not been used for the intended educational purposes and instead has been left vacant or rented out for commercial use. (*Id.* ¶¶ 12–13). Defendant alleges also that Plaintiff took out a mortgage and encumbered the Shvidler Center in 2006, 2009, and 2019. (*Id.* ¶¶ 15–16). Defendant avers that Plaintiff further encumbered the

---

[4] The Court, in connection with this motion to dismiss, will consider the terms of the Deed. At the motion to dismiss stage, "the Court is entitled to consider facts alleged in the [counterclaims] and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the [counterclaims] and relied upon in it." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit."). The Deed, which is annexed as an exhibit to a Declaration in support of Plaintiff's motion to dismiss, is integral to Defendant's Counterclaims and both parties rely on the terms of the Deed in their pleadings and arguments.

[5] Elsewhere in Defendant's Answer asserting Counterclaims, Defendant expresses this term differently, stating that "[Defendant] made restricted charitable gifts of more than $6 million to [Plaintiff] . . . for the sole purpose of constructing an educational facility and ensuring that facility would be used for *specific Jewish educational purposes*." (Counterclaims ¶ 1 (emphasis added)).

Shvidler Center when, pursuant to an arbitration award, Plaintiff agreed that all its assets, including the Shvidler Center, would be "encumbered" by a debt to Rabbi Braun after Rabbi Braun gave up ownership and control of Plaintiff. (*Id.* ¶¶ 17–18). Defendant asserts that these actions are in violation of the Deed and oral terms of the Gifts provided by Defendant to Plaintiff. (*Id.* ¶¶ 14–16, 18).

On November 12, 2019, Defendant requested that Plaintiff (1) return the Gifts, (2) confirm the Shvidler Center was never mortgaged or otherwise encumbered, and (3) provide Defendant accounting books and records related to the Shvidler Center. (*Id.* ¶ 20). Thereafter, Plaintiff commenced this action. (*Id.* ¶ 21).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to consider dismissing counterclaims for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). Rule 12(b) "applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Gerdau Ameristeel US Inc. v. Ameron Int'l Corp.*, No. 13-CV-07169, 2014 WL 3639176, at *2 (S.D.N.Y. July 22, 2014).

"To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-pleaded factual allegations [in the counterclaims], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the [non-movant]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a counterclaim plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Before turning to the merits of Defendant's Counterclaims, the Court must address several preliminary issues raised by Plaintiff. These preliminary issues raise yet to be pled affirmative defenses. Fed. R. Civ. P. 12(b) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). An Answer asserting counterclaims is a pleading to which a responsive pleading is required. Fed. R. Civ. P. 12(a)(1)(B). Certain defenses enumerated in Rule 12(b)(1–7) may be asserted in a pre-answer motion. The unpled affirmative defenses raised by Plaintiff in the case at bar largely fall outside of the Rule 12(b) enumerated defenses. Nonetheless, it is appropriate for the Court to address these affirmative defenses at this juncture. *See, e.g., Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."); *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 254 (S.D.N.Y. 2018) ("Lack of standing may be grounds for dismissal under Rule 12(b)(1)."); *see also*

§ 1360 Preliminary Motions Not Enumerated in Rule 12(b), 5C Fed. Prac. & Proc. Civ. § 1360 (3d ed.) ("Perhaps the most obvious example of expanding the scope of an enumerated Rule 12(b) defense to permit a matter to be raised by pre-answer motion is the willingness of the courts to permit affirmative defenses, such as res judicata and statute of limitations, to be raised by a motion to dismiss for failure to state a claim under Rule 12(b)(6)"); § 1277 Raising Affirmative Defenses by Motion, 5 Fed. Prac. & Proc. Civ. § 1277 (3d ed.) ("Many courts permit affirmative defenses to be asserted by [a pre-answer] motion even when the defenses are not available on the face of the complaint. This is especially true as to those affirmative defenses that seem likely to dispose of the entire case or a significant portion of the case and defenses that require no factual inquiry for their adjudication. In situations such as these, the federal courts appear to be wise in overlooking the formal distinctions between affirmative defenses and motions, which have their primary justification in history rather than logic."). Therefore, the Court will address seriatim Plaintiff's arguments regarding (1) Defendant's standing, (2) the justiciability of Defendant's Counterclaims, (3) the application of the statute of frauds to the parties' agreement, (4) the application of the parol evidence rule to the parties' agreement, and (5) the statute of limitations.

## I.   **Defendant's Standing**

Plaintiff argues that pursuant to New York Estates, Powers, and Trusts Law ("EPTL") § 8-1.1, Defendant does not have standing to assert its Counterclaims. (Pl. Br. at 15–20). The Court rejects this argument and finds that Defendant has standing.

EPTL § 8-1.1 provides that the "attorney general shall represent the beneficiaries of such dispositions for religious, charitable, educational or benevolent purposes and it shall be his duty to enforce the rights of such beneficiaries by appropriate proceedings in the courts." EPTL § 8-1.1(f). A gift is considered a disposition within the meaning of EPTL § 8-1.1. *See Lefkowitz v. Lebensfeld*,

415 N.E.2d 919 (N.Y. 1980). Therefore, according to Plaintiff, the Attorney General on behalf of the beneficiaries of a not-for-profit organization has "exclusive jurisdiction" to challenge how the organization uses a donor's gift. (Pl. Br. at 15–20). As Plaintiff's argument goes, Defendant is no differently situated and has no greater standing than any other member of the general public attempting to challenge how Plaintiff used Defendant's donation. (*Id.* at 16–17). Defendant argues, conversely, that it is not a "beneficiary" of Plaintiff, but rather, Defendant is merely enforcing its contractual rights and has standing to do so. (Def. Br. at 15–17).

The Court in *Smithers v. St. Luke's-Roosevelt Hosp. Ctr.*, a case on which both parties rely in support of their respective positions, addressed this very standing issue and establishes that Defendant does have standing to assert its Counterclaims. *See* 723 N.Y.S.2d 426 (N.Y. App. Div. 2001). In *Smithers*, Mr. Smithers, a recovering alcoholic, donated $10 million to St. Luke's-Roosevelt Hospital Center (the "Hospital") for the establishment of an alcoholism treatment center. *Id.* Mr. Smithers attached a number of conditions on his gift. *Id.* After Mr. Smithers died, his widow, Mrs. Smithers, commenced an action "to enforce the conditions of the [g]ift." *Id.* The New York Supreme Court, relying on EPTL § 8-1.1, found that "since the [g]ift instruments do not provide Mrs. Smithers with the right of oversight, that right is vested exclusively in the Attorney General and Mrs. Smithers has no standing to sue." *Id.* The Appellate Division reversed holding that the "donor of a charitable gift is in a better position than the Attorney General to be vigilant and, if he or she is so inclined, to enforce his or her own intent." *Id.* The court further found that "[w]e have seen no New York case in which a donor attempting to enforce the terms of his charitable gift was denied standing to do so" and held that Mrs. Smithers had standing to sue. *Id.*; *see also Reed Found., Inc. v. Franklin D. Roosevelt Four Freedoms Park, LLC*, 964 N.Y.S.2d 152

(N.Y. App. Div. 2013) (holding donor has standing to enforce its contractual agreement related to donation). Accordingly, the Court finds that Defendant has standing to assert its Counterclaims.

## II.   Justiciability of Defendant's Counterclaims

Plaintiff argues that Defendant's Counterclaims are non-justiciable because adjudication of Defendant's Counterclaims requires the Court to determine, *inter alia*, whether the Gifts were used "in accordance with specific and designated non-profit religious educational purposes." (Pl. Br. at 23; Counterclaims ¶ 9). Plaintiff argues that such a determination would require the Court to make a determination on religious grounds in violation of Plaintiff's First Amendment rights. (*Id.*). The ecclesiastical abstention doctrine provides that "the First Amendment precludes judicial review of proceedings that turn on issues of . . . religious doctrine." *Hyung Jin Moon v. Hak Ja Han Moon*, 431 F. Supp. 3d 394, 404 (S.D.N.Y. 2019). Plaintiff argues that resolution of Defendant's Counterclaims requires such an impermissible foray into religious doctrine. Plaintiff relies, in support of its argument, on *Congregation Yetev Lev D'Satmar, Inc. v. Kahana,* which held that resolution of an election controversy at a synagogue could not be resolved through neutral principles of law and therefore presented a non-justiciable issue. *See* 9 N.Y.3d 282 (2007). At issue in *Kahana* was who would be elected Grand Rabbi after the prior Grand Rabbi died. *Id.* at 285. The court held it could not adjudicate the dispute without determining whether a synagogue member was in good standing and that such a determination would constitute an impermissible "intrusion into constitutionally protected ecclesiastical matters." *Id.* at 288.

While the court found that the issue in *Kahana* was non-justiciable, in general, "[c]ivil disputes involving religious parties or institutions may be adjudicated without offending the First Amendment as long as neutral principles of law are the basis for their resolution." *Id.* at 286*; see also Hyung Jin Moon*, 431 F. Supp. 3d at 407 (holding that courts can "resolv[e] secular disputes

involving religious entities . . . to the extent they are amenable to the application of neutral principles."). Defendant argues that this action "is not a religious dispute" and the Court is not being asked to "wade into any [] religious issue." (Def. Br. at 23). At the pleadings stage, it does not appear to the Court that this dispute implicates the ecclesiastical abstention doctrine, and, at bottom, this is a contract dispute that can be resolved by application of neutral principles of law. *See, e.g.*, *Smith v. Clark*, 709 N.Y.S.2d 354, 358 (N.Y. Sup. Ct. 2000), *aff'd*,  730 N.Y.S.2d 896 (N.Y. App. Div. 2001) ("This Court has authority to resolve contract issues where the case is capable of being determined solely upon the application of neutral principles of contract law, without resolving any controversy over religious doctrine."). Accordingly, the Court does not find, at this early stage, that resolution of Defendant's Counterclaims will violate the ecclesiastical abstention doctrine.

### III.  <u>Statute of Frauds</u>

Plaintiff next argues that the parties' agreement falls within the scope of New York General Obligations Law ("NYGOL") § 5-703 which requires that certain transactions related to real estate be put in writing. Section 5-703 provides in relevant part:

> An estate or interest in real property . . . or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing . . . .

N.Y. Gen. Oblig. Law § 5-703(1). The term "estate or interest in real property" includes "every such estate and interest, freehold or chattel, legal or equitable, present or future, vested or contingent." *Id.* § 5-101(2). Defendant here does not allege that it has an interest in Plaintiff's real property. (*See* Def. Br. at 9 ("[Defendant] does not allege that the parties' agreement granted, conveyed, or otherwise transferred an interest in real property from [Plaintiff] to [Defendant]. Indeed, [Defendant] does not allege that it has or retains any property interest in [the Shvidler

Center].")). Rather, Defendant alleges that it has a contractual right to impose certain restrictions on how Plaintiff uses the Shvidler Center and, according to Defendant, such restrictions on the use of a building do not fall within the scope of NYGOL § 5-703.

The cases on which Plaintiff relies in support of its argument that an agreement which imposes restrictions on the use of a building fall within the scope of NYGOL § 5-703 are clearly distinguishable. In *Dunbar Camps v. Amster*, the plaintiff entered into a written agreement to purchase a boys' camp from defendant. 106 N.Y.S.2d 508, 509 (N.Y. Sup. Ct. 1951), *modified*, 107 N.Y.S.2d 441 (N.Y. App. Div. 1951). The written deed conveying the real property contained restrictive covenants providing that the seller would not operate a boys' camp on the land it retained for a specified period of time. *Id.* Plaintiff alleged that during the negotiating process additional oral promises were made indicating that the seller would not operate a boys' camp on the land indefinitely. *Id.* The Appellate Division held that this alleged oral promise fell within the statute of frauds and was not enforceable. *Dunbar Camps,* 107 N.Y.S.2d at 442. Importantly, the oral condition was directly related to the transfer or conveyance of real property and affected the way in which real property could be used and/or developed. The alleged oral condition in *Fromkin v. Merrall Realty, Inc*., also was connected to the sale of real property and affected the way in which the property could be used and/or developed. 215 N.Y.S.2d 525, 528 (N.Y. Sup. Ct. 1961), *aff'd* 225 N.Y.S.2d 632 (N.Y. App. Div. 1962). In *Fromkin*, plaintiff, a hotel operator, sold land to defendants. *Id.* Plaintiff alleged that the purchase included a restrictive covenant that hotels or motels would not be developed on the land sold, but that this portion of the alleged agreement was never put in writing. *Id.* The court held that the alleged oral agreement was within the province of the statute of frauds and unenforceable. *Id.* at 535.

Here, Defendants do not allege that they obtained or conveyed any interest in real property in making donations to Plaintiff. The oral conditions allegedly negotiated at the time Defendant made a donation to Plaintiff are wholly unconnected to an estate or interest in real property and impact only the way in which the Shvidler Center can be used, not the way in which real property can be used. The Court is aware of no authority, and Plaintiff points to none, which holds that the oral conditions at issue here—(1) restrictions on the use of the Shvidler Center for "designated non-profit religious educational purposes" and (2) a prohibition against the Shvidler Center being mortgaged or otherwise encumbered (Counterclaims ¶ 9)—fall within the scope of NYGOL § 5-703. The Court finds that NYGOL § 5-703 does not require that the allegedly breached oral conditions be reduced to writing. Accordingly, to the extent that the oral terms are a part of the parties' agreement, those oral terms are not barred by NYGOL § 5-703.[6]

## IV.   Parol Evidence Rule

The Court next addresses the impact of the parol evidence rule on the alleged oral contract terms. Plaintiff argues that the oral terms may not be considered by the Court because the Deed is fully integrated, and the language of the Deed is unambiguous. Therefore, Plaintiff seeks to invoke the parol evidence rule as a complete bar to Defendant's allegations that additional oral terms were included in the terms of the Gifts. Based on Defendant's allegations, and accepting them as true as

---

[6] On August 24, 2020, more than two months after Plaintiff's motion to dismiss was fully briefed and submitted to the Court, Plaintiff filed a letter motion seeking permission to supplement its motion to dismiss and add a new argument that New York's general statute of frauds, N.Y. Gen. Oblig. Law § 5-701(a)(1), bars the oral conditions. (Doc. 52). Defendant opposed Plaintiff's request to supplement (Doc. 53), and Plaintiff filed a reply (Doc. 54). Arguments not raised in a party's brief are deemed waived. *See Pfizer, Inc. v. United States*, No. 16-CV-1870, 2017 WL 4350581, at *2 (S.D.N.Y. June 30, 2017) (citing *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015)). Accordingly, the Court will not consider Plaintiff's argument that Defendant's breach of contract counterclaim is barred by NYGOL § 5-701.

the Court must at the pleading juncture, the Court cannot conclude that the oral terms are barred by the parol evidence rule.

The parol evidence rule permits the consideration of oral terms that "interpret, explain, or clarify . . . the written document." *United States v. Lennox Metal Mfg. Co.*, 225 F.2d 302, 313 (2d Cir. 1955) (quoting *Rotberg v. Dodwell & Co.*, 152 F.2d 100, 101 (2d Cir. 1945)). The parol evidence rule does not permit the consideration of oral terms that contradict a written document. *Id.*; *Cerveceria Modelo, S.A. de C.V. v. USPA Accessories LLC*, No. 07-CV-7998, 2008 WL 3919186, at *1 (S.D.N.Y. Aug. 25, 2008) ("[T]he parol evidence rule excludes evidence of all prior or contemporaneous negotiations, agreements or understandings offered to contradict, vary or modify the terms of their writing.").

The Court cannot determine, at the pleading stage, whether the Deed is an integrated document. A written agreement is integrated when the document "represents the entire understanding of the parties to the transaction." *Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 213 (S.D.N.Y. 2003). Under New York law, the Court can determine whether a document "appears complete on its face [and] is an integrated agreement as a matter of law." *Id.* (citing *Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000)). Where a contract contains an express merger or integration clause, the parties have expressed an intent that the written contract constitutes the entirety of the parties' agreement, and parol evidence is likely to be barred. *Fierro v. Gallucci*, No. 06-CV-5189, 2008 WL 2039545, at *6 (E.D.N.Y. May 12, 2008) ("Where the operative agreement contains an express integration, or merger clause, the Second Circuit has found such agreements to be fully integrated." (citing *Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 295 (2d Cir.1999))). When, however, "the written agreement does not contain a merger clause, the court must determine

whether the agreement is integrated 'by reading the writing in the light of surrounding circumstances, and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing.'" *Bourne v. Walt Disney Co.*, 68 F.3d 621, 627 (2d Cir. 1995) (quoting *Braten v. Bankers Trust Co.,* 456 N.E. 2d 802, 804 (1983)). Factors relevant to the court's determination of whether an agreement is integrated include:

> [W]hether the document in question refers to the oral agreement, or whether the alleged oral agreement between the parties is the sort of complex arrangement which is customarily reduced to writing; whether the parties were represented by experienced counsel when they entered into the agreement; whether the parties and their counsel negotiated during a lengthy period, resulting in a specially drawn out and executed agreement, and whether the condition at issue is fundamental . . . .

*Arias-Zeballos v. Tan*, No. 06-CV-1268, 2006 WL 3075528, at *8 (S.D.N.Y. Oct. 26, 2006) (quoting *Morgan Stanley High Yield Secs., Inc.,* 269 F.Supp.2d at 214).

The determination of whether a document is fully integrated in the absence of a merger clause is a "highly fact-dependent" inquiry. *Id.* Therefore, because the factors the court must consider when determining whether a contract is integrated are "fact based," whether a contract is integrated often is "not appropriate for determination on a motion to dismiss." *All R's Consulting, Inc. v. Pilgrims Pride Corp.*, No. 06-CV-3601, 2008 WL 852013, at *12, n.7 (S.D.N.Y. Mar. 28, 2008); *see also Navigant Consulting, Inc. v. Kostakis*, No. 07-CV-2302, 2007 WL 2907330, at *8 (E.D.N.Y. Oct. 4, 2007) ("Generally, courts determining whether or not an agreement is integrated . . . do so at the summary judgment stage." (citing *Adler & Shaykin v. Wachner,* 721 F.Supp. 472, 477 (S.D.N.Y.1988))).

Here, the Deed does not include a merger or integration clause (*see generally* Deed), and the Counterclaims do not address the factual predicate for the Court's determination of integration. The Court finds that, at this stage of the litigation, it is not possible to determine whether the parties intended the Deed to "represent[] the entire understanding of the parties to the transaction." *See*

*Morgan Stanley High Yield Sec., Inc.*, 269 F. Supp. 2d at 213. The Deed specifies that Defendant gifted $250,000 to Plaintiff, but neither the Deed nor any other piece of paper presently before the Court establishes whether the parties intended the Deed to cover the subsequent donations of more than $6,000,000. Defendant asserts in its Counterclaims that all donations "were made pursuant to the same terms and with the same understanding as the initial transfer made pursuant to the Deed." (Counterclaims ¶ 11). Discovery may reveal whether this was the mutual understanding of the parties and may also reveal additional information about the negotiating process, the parties involved in the negotiating process, the parties' understanding of the scope of the agreement, the applicable terms at the time the agreement was entered, and whether the parties contemplated additional donations being subjected to the terms of the Deed.

Likewise, while there is reference in the Deed to Plaintiff's "non-profit purposes" the Court cannot determine at this time whether such reference was or was not the entire understanding of the parties to this agreement. The Court finds at the motion to dismiss stage that it cannot determine, as a matter of law and without additional evidence, whether parol evidence will be permitted. Accordingly, the parol evidence rule will not bar Defendant's breach of contract counterclaim at this juncture.

### V.    <u>Statute of Limitations</u>

Finally, Plaintiff argues that Defendant's breach of contract counterclaim is barred by the statute of limitations. The statute of limitations for a breach of contract claim in New York is six years. *See* N.Y. C.P.L.R. 213 ("The following actions must be commenced within six years: . . . an action upon a contractual obligation or liability"). Plaintiff's Complaint was filed on December 23, 2019 and Defendant's Answer asserting counterclaims was filed on January 14, 2020. (Docs.

1, 8). The sprawling allegations in the Counterclaims span decades; a portion of which is outside the six-year statute of limitations and thus barred.

Defendant claims that Plaintiff breached the alleged oral term that the Shvidler Center "would never be mortgaged or otherwise encumbered" in 2006, 2009, and 2019. (Counterclaims ¶¶ 15–18). The 2006 and 2009 mortgages are barred by the six-year statute of limitations for contract claims in New York. *See Lehman XS Tr., Series 2006-4N ex rel. U.S. Bank Nat. Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014), *aff'd*, 643 F. App'x 14 (2d Cir. 2016) (finding that under New York law, "a breach of contract claim accrues at the time of breach"). Defendant appears to concede this point, as it does not argue in opposition to Plaintiff's motion to dismiss that the 2006 or 2009 mortgages constitute a breach. (Def. Br. at 17–18).

As to the breach of the second alleged oral term regarding whether the Shvidler Center was "used in accordance with specific and designated non-profit religious educational purposes," it is unclear when such a breach occurred, but any breach arising prior to January 14, 2014 is certainly time-barred. Accordingly, the Court finds that Defendant's Counterclaims asserting specific breaches of the parties' agreement in 2006 and 2009 as well as any other breach arising prior to January 14, 2014 are time-barred.[7]

---

[7] Plaintiff's arguments concerning the UCC-1 financing statement will not be considered as the UCC-1 is not the type of document permitted to be considered on this motion to dismiss. *See MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 498–99 (S.D.N.Y. 2017 ), *aff'd*, 719 F. App'x 47 (2d Cir. 2017) ("[A] document outside the complaint may not serve as the basis for a dismissal unless it is 'clear on the record that no dispute exists regarding the authenticity or accuracy of the document,' and it is 'clear that there exist no material disputed issues of fact regarding the relevance of the document." (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006))).

## VI.  __Defendant's Counterclaims__

Turning to the merits of Defendant's Counterclaims, the Court will analyze Defendant's breach of contract, breach of fiduciary duty, and accounting claim seriatim.

### A.  Breach of Contract

"Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (quoting *Balk v. N.Y. Inst. of Tech.*, 683 Fed. Appx. 89, 95 (2d Cir. 2017)).[8] Here, Defendant alleges that a valid contract exists. (Counterclaims ¶ 7 ("[Defendant] and [Plaintiff] executed a deed of gift . . . dated July 20, 2005 . . . [which] provided that [Defendant] would make a restricted gift of $250,000 to [Plaintiff]."); *id.* ¶ 23 ("The parties had a valid and binding agreement regarding the Restricted Gifts."); Pl. Br. at 13–14 (arguing that the Deed is a fully-integrated contract)). Additionally, Defendant alleges that it performed under the contract. (Counterclaims ¶ 9 ("[R]epresentatives of [Plaintiff] . . . and Mr. Shvidler (on behalf of

---

[8] The Deed provides that, "[t]his Deed shall be governed by and constructed in all respects in accordance with the laws of England without regard to its conflict of law principles." (Deed ¶ 5). The Court finds, however, that at least for the purposes of this motion to dismiss, New York law controls. There are two reasons to refuse to apply the choice of law provision set forth in a contract. First, a choice of law provision may be excused when the "forum bears no reasonable relationship to the parties or the transaction." *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 148 (S.D.N.Y. 2017). Factors relevant to whether a reasonable relationship exists between the forum identified in a choice of law provision and the parties or transaction are "the location of . . . the parties' negotiation of the agreement; performance under the agreement, including where loan payments were received; the parties' places of incorporation; the parties' principal places of business; and the property that is the subject of the transaction." *Id.* The parties have not addressed this issue and the Answer simply does not provide the necessary facts. The Court notes that England does not appear to have any connection to the parties or the relevant transaction. The second reason, though, furnishes the explanation: "even when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another [forum's] law." *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 323 (S.D.N.Y. 2014) (quoting *Cargill, Inc. v. Charles Kowsky Res., Inc.,* 949 F.2d 51, 55 (2d Cir. 1991)). Here, Plaintiff argues that New York law should apply. (Pl. Br. at 24–25). Defendant's brief does not suggest otherwise (*see generally* Def. Br.), and both parties rely exclusively on New York cases in support of their arguments. Accordingly, and for purposes of this motion to dismiss, the Court finds that New York law applies.

[Defendant]) agreed that [Plaintiff] would receive the amounts [Defendant] contributed"); *id.* ¶ 11 ("[Defendant] made substantial subsequent contributions to [Plaintiff] for the same purpose and, in total, provided at least $6,650,000 to [Plaintiff] . . . . All the Restricted Gifts were made pursuant to the same terms and with the same understanding as the initial transfer made pursuant to the Deed."); Compl. ¶ 10 ("[Plaintiff] has received from [Defendant] . . . donations in the approximate amount of $6,450,300.00"). Furthermore, Defendant asserts it has suffered damages. (Counterclaims ¶ 26; *id.* at *Wherefore Cl.* (seeking "compensatory damages in an amount to be determined at trial, but in no event less than $6,650,000")).

At issue on this motion, is the third element of a breach of contract claim: whether Defendant has alleged a breach of the contract. Crucial to this inquiry, and disputed by the parties, is what precisely are the terms of the applicable contract and which of Defendant's donations are covered by the terms of the applicable contract. Defendant's Counterclaims allege that the contract consists of both the written terms of the Deed and additional oral terms including "(1) that the restricted gift be used to construct an educational facility to be used in accordance with specific and designated non-profit religious educational purposes; (2) that the resulting facility would never be mortgaged or otherwise encumbered; and (3) that the resulting facility would be named in honor of Mr. Shvidler's family." (Counterclaims ¶¶ 7, 9). Furthermore, Defendant argues that all of its donations—"at least" $6,650,000—"were made pursuant to the same [written] terms and with the same [additional oral] understanding as the initial transfer made pursuant to the Deed." (*Id.* ¶ 11).

Defendant alleges that Plaintiff breached the first oral condition because the Shvidler Center "has predominately not been used for the specific educational purposes contemplated by the parties' original agreement and understanding. Rather than being used to provide the intended educational opportunities, most of the time [the Shvidler Center] is and has been for some years

either left vacant or rented out commercially." (*Id.* ¶¶ 12–13). Defendant alleges that Plaintiff breached the second oral condition because Plaintiff took out a mortgage and encumbered the Shvidler Center in 2006, 2009, and 2019. (*Id.* ¶¶ 15–16). Defendant alleges that Plaintiff further encumbered the Shvidler Center in 2019 when Plaintiff, pursuant to an arbitration award, "agreed that all of its assets (thus including [the Shvidler Center]) would be 'encumbered' by the debt to Rabbi Braun" after Rabbi Braun relinquished any claim to ownership or control of Plaintiff. (*Id.* ¶¶ 17–18).[9]

Plaintiff argues, alternatively, that the only donation subject to any terms is the $250,000 specified in the Deed. (Pl. Br. at 11). Furthermore, Plaintiff argues, because the oral terms cannot be considered part of the parties' agreement, the Deed does not impose any restrictions on Plaintiff's use of the money. (*Id.*). Plaintiff claims that the deed provides only that Defendant is transferring $250,000 to Plaintiff "absolutely" to support Plaintiff's "non-profit purposes." (*Id.* at 1; *see also* Deed ¶¶ 1.1–1.3, 2.1, 4.1).

The Court's task, at the motion to dismiss stage, is to determine whether the pleading "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Having determined, at the pleading juncture, that (1) Defendant has standing, (2) Defendant's Counterclaims are not barred by the ecclesiastical abstention doctrine, (3) the statute of frauds does not apply, (4) consideration of the alleged oral terms is not barred by the parol evidence rule, and (5) Defendant has alleged breaches within the statute of limitations, the Court finds that Defendant has stated a plausible breach of contract counterclaim. Discovery may later reveal that the breach of contract counterclaim is barred by the parol evidence rule, statute of limitations, statute of frauds, and/or

---

[9] Defendant does not allege that the third oral term was breached. In fact, the third oral term appears to have been complied with as the educational center built was named in honor of the Shvidler family. (*Id.* ¶ 10).

the ecclesiastical abstention doctrine—but at the juncture, and based upon the allegations in the Counterclaim, the Court deems the breach of contract counterclaim plausible. Accordingly, the Court denies Plaintiff's motion to dismiss Defendant's breach of contract counterclaim.

### B. Breach of Fiduciary Duty Counterclaim

As to Defendant's second counterclaim alleging a breach of fiduciary duty, this claim is dismissed. Defendant does not dispute the existence of a valid contract. (Counterclaims ¶ 23 ("The parties had a valid and binding agreement regarding the Restricted Gifts.")). Under New York law, for a breach of fiduciary duty claim to exist a "plaintiff must demonstrate a legal duty separate from the duty to perform under the contract." *Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 820 (S.D.N.Y. 2019); *see also Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03-CV- 1537, 2003 WL 23018888, at *15–16 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004) ("[A] defendant may be liable in tort . . . when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations . . . [W]here a party is merely seeking to enforce its bargain, a tort claim will not lie." (quoting *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995))). Here, Defendant's breach of fiduciary duty counterclaim is premised on the same conduct that underlies Defendant's breach of contract counterclaim. Defendant claims that "[Plaintiff] breached its fiduciary duties, *inter alia*, by using the Restricted Gifts for purposes other than those to which the Restricted Gifts were dedicated, and by encumbering [the Shvidler Center]." (Counterclaims ¶ 29). The breach of contract counterclaim is premised on the same allegedly wrongful conduct. In fact, Defendant uses nearly identical language in its breach of contract counterclaim. (*Id.* ¶ 25 ("[Plaintiff] breached its obligations under the agreement regarding the Restricted Gifts, *inter alia*, by using the Restricted Gifts for purposes other than those to which the Restricted Gifts were dedicated, and by encumbering [the

Shvidler Center].")). Because a "breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim," *Gasery,* 422 F. Supp. 3d at 820 (quoting *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013)), Defendant's breach of fiduciary duty counterclaim is dismissed.[10]

## C. <u>Accounting Counterclaim</u>

Defendant's third counterclaim seeking an accounting must also fail because there is no right to an accounting in the absence of a fiduciary duty. *See Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc*., 87 F.3d 44, 49 (2d Cir. 1996) ("In order to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with the defendant." (citing *Palazzo v. Palazzo*, 503 N.Y.S.2d 381, 384 (N.Y. App. Div. 1986))). Separately, the Deed, a valid contract existing between the parties, provides that "[t]he Recipient [of the donation] shall provide to the Donor, bas[ed] on its request, an annual[] analysis of the manner in which the Donation or any part thereof have been applied." (Deed § 4.2). Defendants allege that all donations made by Defendant to Plaintiff "were made pursuant to the same terms and with the same understanding as the initial transfer made pursuant to the Deed." (Counterclaims ¶ 11). Because the valid and existing agreement provides Defendant a right to an accounting, and Defendant alleges that all donations were made subject to this agreement, no

---

[10] Separately, the Answer is insufficient to establish that a fiduciary relationship exists between Plaintiff and Defendant. A fiduciary relationship exists between two people or entities when "one of them is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation." *Lia v. Saporito*, 909 F. Supp. 2d 149, 170 (E.D.N.Y. 2012), *aff'd*, 541 F. App'x 71 (2d Cir. 2013) (citing *St. John's University v. Bolton*, 757 F.Supp.2d 144, 166 (E.D.N.Y. 2010)). There are four elements "essential to the establishment of a fiduciary relationship: (1) the vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." *Id*. (citing *St. John's University*, 757 F. Supp. 2d at 166). Defendant's Counterclaims do not establish that these elements are satisfied here, and the Court is aware of no authority establishing that a donor/donee relationship creates a *de facto* fiduciary relationship.

separate tort claim for an accounting can exist. *See Najjar Grp., LLC v. West 56th Hotel LLC*, No. 14-CV-7120, 2017 WL 819487, at *3 (S.D.N.Y. Mar. 1, 2017) ("An equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter . . . because a plaintiff would be able to obtain the information and damages through discovery of his or her breach of contract claim, and thus, he or she has an adequate remedy at law."). Accordingly, Defendant's third counterclaim is dismissed.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion to dismiss Defendant's Counterclaims is GRANTED in part. Defendant's second and third counterclaims are dismissed.

Plaintiff shall file a Reply to Defendant's Counterclaims within 10 days from the date of this Order. The Clerk is instructed to terminate the pending motions (Docs. 29, 52).

**SO ORDERED:**

Dated: New York, New York
   September 1, 2020

_____
Philip M. Halpern
United States District Judge