```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

OHR SOMAYACH/JOSEPH TANENBAUM
EDUCATIONAL CENTER,

            Plaintiff,

       v.                                19 CV 11730

                                         Telephone Conference

FARLEIGH INTERNATIONAL,
LIMITED,

            Defendant.

------------------------------------x
                                         United States Courthouse
                                         White Plains, New York
                                         May 11, 2021




Before:  THE HONORABLE ANDREW E. KRAUSE, Magistrate Judge


                          APPEARANCES

JONATHAN M. PROMAN
     Attorney for Plaintiff


MORVILLO, ABRAMOWITZ, GRAND, IASON & ANELLO, P.C.
     Attorneys for Defendant
BENJAMIN S. FISCHER
KEVIN GROSSINGER
CHRISTOPHER B. HARWOOD



*Proceeding recorded via digital recording device.
```

1            THE DEPUTY CLERK:  Good morning.
2            This is the matter of Ohr v. Farleigh, 19 CV 11730,
3    the Honorable Andrew Krause presiding.
4            Counsel, please state your name for the record,
5    starting with plaintiff's counsel.
6            MR. PROMAN:  Good morning, your Honor.  This is
7    Jonathan Proman on behalf of the plaintiff, Ohr Somayach.
8            THE COURT:  Good morning, Mr. Proman.
9            MR. FISCHER:  Good morning, your Honor.  Benjamin
10   Fischer from Morvillo, Abramowitz, Grand, Iason & Anello on
11   behalf of Farleigh International, Limited, and I'm joined by my
12   colleagues, Christopher Harwood and Kevin Grossinger.
13           THE COURT:  Good morning Mr. Fischer, Mr. Harwood and
14   Mr. Grossinger.
15           All right.  We're here today for a status conference.
16   We've had a couple of rounds of settlement conferences over the
17   past couple of months and we set this date for you to report
18   back on the status of those discussions and to set a scheduling
19   order if it seems as though the settlement is not going to
20   happen.
21           So, Mr. Proman, why don't you let me know where
22   things stand from your perspective.
23           Then I'll hear from you, Mr. Fischer, and then we'll
24   see what to do from here.
25           MR. PROMAN:  Thank you, your Honor.

1           When we were at the last settlement conference, I
2  believe there were three to four open issues and, as of now,
3  the parties have been able to resolve all of those issues
4  except for one.  So, right now, there's one open issue that the
5  parties still cannot reach agreement about.
6           Mr. Fischer and I spoke before today's conference
7  and, when we spoke earlier today, what we would jointly propose
8  to the Court is to afford about seven to ten additional days
9  from today for the parties to try to bridge the last remaining
10 gap and, at the same time, if it's okay with the Court's
11 schedule, to offer a few days.  And what Farleigh and the
12 plaintiff would propose to the Court is, by -- or, rather, on
13 Friday, June 4th the parties submit a proposed discovery order,
14 meaning a scheduling order, simultaneously submit letter briefs
15 as to an order that -- an issue that had arisen prior to
16 settlement discussions regarding the order of depositions.  The
17 plaintiff, in the event the case does not become resolved,
18 would like to depose Farleigh next and Farleigh does not
19 necessarily agree with that.  And also, on Friday June 4th,
20 after the parties get up to speed and, really, the lawyers get
21 up to speed, in the event there's no resolution, for the option
22 to the parties -- for the parties to also submit a joint letter
23 or separate letter as to any other issues that they foresee may
24 be worthwhile to alert the Court about and after that Friday,
25 June 4th submission date, in the event there's no resolution,

1  to have the week after that, which would be the week of the
2  7th, a hearing before your Honor.  And the week of the 7th I
3  understand is difficult for Farleigh's side, so it may be the
4  week of the 14th if that's better for everybody, including the
5  Court, but, at that hearing, have a few things done.  Number
6  one, if the Court permits it, to have the Court decide
7  redaction issues that were previously letter briefed and fully
8  submitted to the Court a number of months ago, to decide the
9  order of deposition issue, and also for your Honor to let us
10 know whether you're okay with the scheduling order.
11          So that was a bit of a mouthful, but hopefully I said
12 it in a way that was reasonably easy to follow.
13          THE COURT:  Yes.  I think I've got it, but I'll make
14 sure I do after I hear from Mr. Fischer.
15          Mr. Fischer, anything to add to Mr. Proman's summary
16 of the state of affairs?
17          MR. FISCHER:  We're generally in agreement with that,
18 your Honor.
19          THE COURT:  Okay.  Well, I have to say I'm quite
20 curious because, obviously, I spent a lot of time with you all
21 working through these settlement issues, but can you tell me,
22 Mr. Proman, which issues have been resolved and which issue
23 remains outstanding?
24          MR. PROMAN:  I could.  I am wondering however, your
25 Honor, and I don't mean to be difficult, but --

1           THE COURT:  You don't want to say it on the record is
2  that right?
3           MR. PROMAN:  Yes.  If we can go off the record, I
4  would appreciate that.
5           THE COURT:  Yes.  That's fine.  That occurred to me
6  as I was asking you that question.
7           Ms. Brown, can you stop the recording for a minute?
8           We'll go off the record because my understanding is
9  that if there is a settlement agreement in this case, it would
10 be a private settlement agreement with an order of dismissal,
11 which is common in many private disputes, and so the settlement
12 terms would not be on the record, in the public domain just as
13 our settlement conferences have been off the record.  I am
14 interested in the terms, but I'm perfectly fine going off the
15 record for a moment.
16          So, Ms. Brown, could you just stop the recording for
17 a minutes, please.
18          THE DEPUTY CLERK:  Sure.  No problem.
19          THE COURT:  Thanks.
20          (Discussion off the record)
21          THE COURT:  Okay.  Thank you both for that update.
22          As far as scheduling, the proposal that you've made
23 makes sense to me.  Let me make sure I understand.  So the
24 parties will basically take the next approximately seven to ten
25 days, call it two weeks, to see if it's possible to finalize a

1    settlement here.  I obviously understand that there is an
2    outstanding issue, that that issue is going to require more
3    time to sort through, and we'll see if you can figure that out
4    in the next, say, two weeks.  That would then give you another
5    ten days or so after that before your proposed June 4th
6    deadline, and I think that should be enough time to get these
7    issues tee'd up.
8               So the proposal would be, if there is no settlement
9    reached within the next seven to ten days, or two weeks, then
10   on Friday, June 4th, the parties would submit a joint proposed
11   scheduling order, or competing versions of a proposed
12   scheduling order if you can't make it a joint proposed order.
13   You would submit letter briefs regarding the issue of the order
14   of depositions, again, to the extent you're not able to resolve
15   that between now and then.  You would also submit a letter --
16   this is the one part I wasn't quite sure I understood,
17   Mr. Proman.  You would submit a joint letter or competing
18   letters regarding any other issues that might come up?  I
19   wasn't sure if that meant there would be other disputes that
20   you would tee up there or that would just be some potential
21   things that you wanted me to be aware of that might come up
22   down the line.
23              Mr. Proman, which was it?
24              MR. PROMAN:  It could be --
25              THE COURT:  Or was it something else?

1                    MR. PROMAN:  It could be any of those things.

2                    THE COURT:  Okay.

3                    MR. PROMAN:  And maybe no letter at all.  But the

4        parties just haven't been in litigation -- in a litigation

5        mindset for some time and we just wanted to leave the door open

6        in case something else came up that we thought your Honor

7        should be aware or could be tee'd up to be decided.

8                    THE COURT:  Okay.  Perfect.  That makes sense.

9                    So the expectation is there will be letter

10       submissions at least on the issue of the order of depositions,

11       potentially other issues, and that's fine.

12                   I guess you're familiar with my requirement that that

13       letter brief be very succinct.  That said, if there are three

14       separate issues, you don't necessarily need to submit them as

15       three separate letter briefs because that just gets complicated

16       and there's a lot of paper.  I think we can -- given the way

17       that these issues may come up, if there are actual issues in

18       dispute, let's call it two pages per issue, but you can submit

19       it all as one letter.

20                   If it turns out that there are things you just want

21       to put on my radar screen for potential future rulings, I

22       think, given the number of issues that are already going to be

23       presented, let's just hold those in abeyance.  You can mention

24       them to me in a conference, but you don't need to set them out

25       in writing unless there's an actual joint dispute that you're

1  ready to have a ruling on.

2       And then the proposal is to have a conference
3  sometime either the week of the 7th, if we can schedule it
4  then, or the week of the 14th where we would address the
5  anticipated issue of the order of depositions, the already
6  submitted issue of redactions, which I vaguely recall from
7  several months ago, and, of course, the scheduling order
8  itself.

9       Did I get that all, Mr. Proman?

10      MR. PROMAN:  Yes, your Honor.  Thank you.

11      THE COURT:  Okay.  Great.

12      Mr. Fischer, anything you have to add to my summary
13  there?  Do I have everything?

14      MR. FISCHER:  No.  It perfectly summarizes it, Judge.
15  It's okay from our perspective.

16      THE COURT:  Okay.  Well, that all sounds fine.  So
17  we'll set that June 4th deadline for those submissions.  We'll
18  look for a date for a conference in a minute.

19      In getting ready for the conference, I did look back
20  to the last scheduling order that had been submitted and
21  approved in this case, which is ECF number 97.  This is
22  something you had submitted in mid-December, shortly after our
23  December 9th conference, where you told me that you wanted to
24  take a pause in the discovery process so that you could engage
25  in some settlement discussions.  So, obviously, we're here now,

|   |   |
|---|---|
| 1 | just over five months later, and you've made tremendous |
| 2 | progress in the settlement negotiations.  I hope that you are |
| 3 | able to resolve this last set of issues and, if so, great and, |
| 4 | if not, then we'll get back into it.  But I did look at this to |
| 5 | see sort of where things stood and how much time remained on |
| 6 | the discovery schedule at that point.  And I'll just point out |
| 7 | that the proposal you had then, which I endorsed, was to have |
| 8 | fact discovery completed by March 19th with an understanding |
| 9 | that the actual depositions would not resume until January |
| 10 | 19th.  That isn't stated anywhere in the order, but it is in |
| 11 | Mr. Proman's cover letter at ECF 96, which was submitted on |
| 12 | behalf of both parties.  So, essentially, you had a two-month |
| 13 | runway from the restart of depositions to the completion of |
| 14 | fact discovery.  And the way that the schedule was framed at |
| 15 | that point was it was basically going to be five and a half |
| 16 | weeks from the restart of depositions to the completion of |
| 17 | depositions and then you would have a three-week period from |
| 18 | the completion of depositions to the close of fact discovery, |
| 19 | which would give you some time for follow-up discovery |
| 20 | requests, post-deposition discovery requests and requests to |
| 21 | admit.  We had a deadline that actually was a couple weeks |
| 22 | before the completion of depositions.  And then the expert |
| 23 | discovery deadlines were -- look, this is all in the order. |
| 24 | You can go do the same math that I did, but I just went and |
| 25 | counted it up and the expert discovery completion date is eight |

1    weeks after fact discovery was scheduled to be completed.  So
2    the disclosures, both plaintiff's and defendant's disclosures,
3    were going to be due four weeks after the completion of fact
4    discovery and all expert discovery, including depositions,
5    would be completed four weeks later.  So, essentially, there
6    was going to be a three-month period, roughly -- no, close to a
7    four-month period from the restart of depositions on January
8    19th to the completion of all discovery on May 14th.
9              So that's the time frame that we were working with.
10   I think that's the time frame that you should keep in mind when
11   you are submitting your proposed revised scheduling order.  I
12   recognize if you're submitting a proposed schedule to restart
13   sometime in June, four months takes us right to the summer and
14   into the fall.  The summer obviously presents the complications
15   that summers always present for lawyers and witnesses and
16   September, in this case in particular, will present conflicts
17   with the high holy days in September, so I realize that that
18   may cause us to have to push the deadlines out a little bit
19   beyond the four months that we had contemplated when we last
20   had a schedule in place, so I'll be sensitive to that and will
21   understand that, but within reason.  Let's keep that schedule
22   in mind.  It's a tight schedule and I'm sure it would require
23   you to devote a lot of energy to this case in those months,
24   but, again, you know, we've been on pause for a while here and
25   I think we should resume this in a way that is really designed

1   to get discovery completed by the early part of the fall.
2           So, again, you know, you'll look back at ECF 97 and
3   you'll be able to do the exact same calculations I did, but I
4   just wanted to let you know that that's what I have mind based
5   on what had previously been in place, recognizing that some
6   additional accommodations will have to be made given the time
7   of year.  So that's my only other thought on that.
8           Before we look at a date for a conference, is there
9   anything else that we should address today from the plaintiff's
10  perspective, Mr. Proman?
11          MR. PROMAN:  No, your Honor.
12          THE COURT:  Okay.
13          And anything else we should address today from the
14  defendant's perspective, Mr. Fischer?
15          MR. FISCHER:  Not from my perspective, your Honor.
16  Thank you.
17          THE COURT:  All right.  So if you're going to submit
18  the letter briefing and proposed schedule on June 4th, then the
19  earliest I would want to have a conference is late in the week
20  of the 7th.  So theoretically we could do the 10th or the 11th,
21  if those dates would work, but it's also fine with me to push
22  to early in the week of the 14th.  Actually, I was supposed to
23  have a trial late that week and early the following week, which
24  we just had to adjourn, so I actually have a fair amount of
25  scheduling flexibility late the week of the 7th and earlier in

1 the week of the 14th.

2 So, Mr. Fischer, Mr. Proman mentioned you that might
3 have some conflicts late in the week of the 7th or during the
4 week of the 7th.

5 MR. FISCHER:  Your Honor, it was early in the week of
6 the 7th that I think was the issue, Monday through Thursday
7 morning.  Friday could work for me.  The following Monday,
8 notwithstanding the fact that it's Flag Day, which, last I
9 checked, was not a court holiday, also would work for me as
10 well.  And generally I'm available that following week subject
11 to, as your Honor may understand, some children graduation
12 ceremonies here and there that are sprinkled throughout June,
13 but I'm sure we can work around that.

14 THE COURT:  Okay.  Is Flag Day usually a big
15 observation in your office there, Mr. Fischer?

16 MR. FISCHER:  We make our staff work on Flag Day,
17 unfortunately, at least this year.  Maybe there will be a
18 change for next year.

19 THE COURT:  All kidding aside about Flag Day, one
20 thing that has come up recently, and I'm curious to know what
21 your offices are doing, at the end of that week, June 18th, is
22 New York State's observation of the Juneteenth holiday, which
23 is June 19th is my understanding, but observed this year on
24 June 18th, and I was just wondering -- and this doesn't affect
25 our scheduling.  We're not going to do it on that day anyway.

1    But are your offices open on June 18th this year, Mr. Proman
2    and Mr. Fischer?
3              MR. PROMAN:  Mine would be open that day, yes.
4              THE COURT:  Okay.
5              MR. FISCHER:  Your Honor, I know we were closed last
6    year on June 18th and I would assume the same for this year,
7    but I just don't know for sure.
8              THE COURT:  Okay.
9              MR. FISCHER:  But I do know we were closed last year.
10             THE COURT:  As I said, it doesn't matter for our
11   scheduling purposes because I have other things scheduled for
12   that day, but it has been something that's come up in a couple
13   of other conferences recently that certain offices were going
14   to be closed.  It's a New York State holiday, so I assume that
15   means that the New York State courts are closed, but it's not a
16   federal holiday, so the federal courts are open.  But,
17   obviously, I'm trying to be sensitive to scheduling issues and,
18   of course, it serves as an important holiday.  So just curious
19   for my own knowledge.
20             All right.  So, for my scheduling purposes, Monday
21   morning, June 14th, despite the Flag Day conflict, I think
22   would be best for me.
23             Mr. Proman, is the 14th a day that would work for
24   you?
25             MR. PROMAN:  Yes, your Honor.

1          THE COURT:  All right.  Why don't we say 10 a.m. on
2  June 14th.  We will use the same teleconference line.  Frankly,
3  if this case does go back into discovery and goes into the
4  fall, we may one day end up with an in-person conference in
5  this case after all.
6          MR. FISCHER:  I was going to suggest, Judge -- I was
7  going to ask, before you raised it, whether it's possible to
8  have -- you know, whether you were contemplating an in-person
9  conference on the 14th, but it sounds like --
10         THE COURT:  Yes, I think we are starting to
11  contemplate the possibility of in-person conferences.  I don't
12  think that we're going to do that on the 14th, but I would not
13  be surprised if later this summer and into the fall we start to
14  do in-person conferences.
15         One of -- I mean, do you want the real inside
16  baseball?  From my perspective, they are building a courtroom
17  here in White Plains that will be my courtroom, so it will be
18  easier for me to schedule in-person conferences when that
19  construction process is complete.  So I'll be more inclined to
20  do it later in the summer for that reason, but also increased
21  public health security and safety.  So I think probably June
22  14th we'll do on the phone, but, again, if this case progresses
23  into the summer and fall, if we have further discovery
24  disputes, I do think we might end up with an in-person
25  conference.

1           So I do hope that you are able to settle the case
2  mostly just because I know how hard you all have worked on that
3  and I think there are obvious benefits to a settlement here, as
4  we've discussed at length in the past, but if that does not
5  happen, then I'm sure we'll be seeing plenty more of each other
6  or at least having plenty more conversations and then perhaps
7  seeing each other later in the year.
8           So, all right, June 14th, 10 a.m.  We'll do that one
9  by phone and we'll go from there.
10          Obviously, if it turns out that you do reach a
11 settlement or you're 99 percent of the way there, but you're
12 just trying to document it, let me know by letter.  Keep me
13 posted.  I'll of course be reasonable about that because,
14 again, I know how far you've come.  So hopefully, in the next
15 two weeks, you'll be able to run that last issue to the ground,
16 but, if not, then you'll turn to back to litigation posture and
17 we'll go from there.
18          So I think that covers everything for today.  I look
19 forward to speaking with you all again on June 14th at 10 a.m.
20 Until then, stay safe and stay healthy, everybody.  Take care.
21          We're adjourned.
22          MR. FISCHER:  Thank you very much Judge.
23          MR. PROMAN:  Thank you, your Honor.  You, too.
24          THE COURT:  Bye-bye.
                                ----
25