20207lohrcf

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   --------------------------------x

3   OHR SOMAYACH/JOSEPH TANENBAUM
    EDUCATIONAL CENTER,
4
                 Plaintiff,
5
             v.                        19 CV 11730(PMH)
6
                                 TELEPHONE CONFERENCE
7
    FARLEIGH INTERNATIONAL,
8   LIMITED,

9                 Defendant.

10  --------------------------------x

11                                United States Courthouse
                                  White Plains, New York
12                                July 21, 2020

13

14

15  Before:  THE HONORABLE LISA MARGARET SMITH, Magistrate Judge

16

17

18                        APPEARANCES

19  JONATHAN M. PROMAN
         Attorney for Plaintiff
20

21  MORVILLO, ABRAMOWITZ, GRAND, IASON & ANELLO, P.C.
         Attorneys for Defenant
22  BENJAMIN SEAN FISCHER
    KEVIN GROSSINGER
23

24

25  *Proceeding recorded via digital recording device.
```

1              THE DEPUTY CLERK:  Ohr Somayach/Joseph Tanenbaum

2    Educational Center v. Farleigh International, Limited.

3              Counsel, please note your appearance for the record.

4              MR. PROMAN:  Good morning.  This is Jonathan Proman

5    for the plaintiff, Ohr Somayach.

6              MR. FISCHER:  Good morning, your Honor.  This is

7    Benjamin Fischer along with my colleague, Kevin Grossinger,

8    from Morvillo, Abramowitz, Grand, Iason & Anello for the

9    defendant/counterclaim plaintiff, Farleigh International,

10   Limited.

11             THE COURT:  Good morning.

12             MR. FISCHER:  Good morning.

13             THE COURT:  I have received and spent some quality

14   time with your dispute letters.  I'm rather concerned with what

15   I see as a general disregard for the rules.  Just a general

16   disregard.

17             Let's start with Local Civil Rule 26.3, which I'm

18   sure that counsel has memorized.  This provides uniform

19   definitions in discovery requests.  Counsel can't make up their

20   own definitions if they are in the Local Civil Rules.  You may

21   actually choose a narrower definition, but I didn't see that in

22   any of the definitions that counsel chose to utilize.  In order

23   to be admitted to this Bar, you all had to affirm that you were

24   familiar with the local rules.  I wish you were.  So that's my

25   first observation.

20207bmcf

```
1        I guess my next approach is to start with
2   Mr. Proman's letter of July 6th, which seems to dovetail
3   somewhat into Mr. Fischer's letter of July 6th, but let me
4   start with Mr. Proman's letter.  So this is docket entry 37.
5        The first concern that Mr. Proman has raised is
6   defendant's use of general objections.  Now, I do not recall
7   expressly whether I did my standard introduction in this case,
8   but let me be clear.  Since December 2015, general objections
9   have been disallowed.  Disallowed.  They have no place.  They
10  do not belong.  Since December of 2015, more than four years
11  ago, the rules have required specific objections.  So, as far
12  as I'm concerned, those many pages of general objections don't
13  even exist.  They do not comply with the rules, and I'm not
14  going to read them.  You can't assert privilege without
15  producing a privileged log, and you cannot say we've given you
16  everything you're entitled to except things that are
17  privileged.  That is also meaningless.  Of course that's true,
18  but if you're asserting a privilege, you must actually do it by
19  producing a privileged log.
20       Somewhere in one of these letters Mr. Fischer has
21  said, yes, but we didn't withhold anything.  Well, isn't that
22  fascinating.  Because the rules require you to say that.  Under
23  Rule 34(a)(2)(C), an objection must state whether any
24  responsive materials are being withheld on the basis of that
25  objection.  Well, you said that in your letter, but, as far as
```

20207bmcf

```
1    I can see, you didn't say it in your responses to the document

2    demands.

3              I realize these rules were amended after you became a

4    member of this Bar, but you are required to remain up to date.

5              So, as far as I'm concerned, all of the responses

6    that are contained in Farleigh's responses and objections to

7    plaintiff's first request for production of documents are

8    meaningless.  All of them.  Meaningless.  And that means that

9    counsel has to produce the documents.  Because you didn't do it

10   the way it has to be done under the rules.  It's not my rule.

11   I didn't make it up.  These are rules that apply in every case.

12             The same concern with regard to general objections

13   applies to the interrogatories.  General objections are not

14   allowed.  And especially asserting a claim of privilege, which

15   is included in your supposed general objection number 9, is

16   meaningless.

17             Counsel asserts that interrogatory number 1 exceeds

18   Local Civil Rules, but the Local Civil Rule, which at least you

19   know that rule -- but you only sort of know it because this

20   seems to me to be an effort to identify documents.  I'm pulling

21   up the Local Rule right now to have it in front of me so I do

22   not misspeak.  It says custodian, location and general

23   description of relevant documents is what is permitted in

24   initial interrogatories.

25             I don't see what's wrong with interrogatory number 1.
```

1    Mr. Fischer, am I missing something?

2                MR. FISCHER:  Your Honor, let me address

3    interrogatory number 1.  I think the problem with interrogatory

4    number 1 is that it is asking almost for a legal

5    characterization of documents.  We have produced all the

6    documents that we think are responsive to -- all the documents

7    we have identified that are responsive to plaintiff's document

8    requests, any and all agreements that are relevant to this case

9    would be embedded in there.

10               What we're concerned about is that -- we are

11   concerned that an agreement is a characterization, potentially,

12   of a -- it could be construed as a characterization of a

13   document.  Obviously, in this case, this case involves an

14   initial deed of gift.  Okay?  The allegations in this case also

15   involve certain allegations that there were modifications and

16   supplements to that deed of gift by the parties' oral

17   agreement.  There are other documents, your Honor, though, that

18   make clear that, over the years, in connection with the

19   original agreement, Farleigh contributed additional funds at

20   the request of plaintiff, and those were in writing.  Are those

21   agreements?  We are being asked to characterize those rather

22   than just identify documents.

23               And plaintiff has all of our documents.  It's not a

24   substantial production because there aren't that many documents

25   in Farleigh's possession, custody and control relating to this

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

20207bmcf

```
 1   matter, but we've produced everything.

 2            So we think, Judge, that it exceeds the Local Rule

 3   for the reasons that we stated in our letter, and they have the

 4   documents themselves.  And there's a more practical way of

 5   obtaining the information sought.  They have the production.

 6   So rather than us going back and characterizing the production,

 7   which may provide a legal effect to the documents in the

 8   production, they have our entire production.

 9            THE COURT:  So your answer is anything that might be

10   identified as a written agreement has been produced.  That's

11   your answer?

12            MR. FISCHER:  That's correct, Judge.

13            THE COURT:  All right.

14            Mr. Proman, you've got what you need there.

15            Interrogatory number 2 potentially could be more

16   efficiently phrased in order to elicit the information, but, of

17   course -- of course -- counsel have already identified -- let

18   me get the exact language -- the name, address and telephone

19   number, even though defendant's counsel has not produced that

20   information, even though it's required in the rules, the name,

21   address and telephone number of each individual likely to have

22   discoverable information.  26(a)(1) requires, without a demand.

23            So why do you need something more, Mr. Proman?  What

24   possible information could there be beyond 26(a)(1), assuming

25   for the moment that the 26(a)(1) disclosure is thorough and
```

1    complete, which we know it's not because it fails to include

2    address and telephone information?

3         MR. PROMAN:  Your Honor, the 26(a) disclosure refers

4    to Mr. Shvidler and Mr. Matlin as having information concerning

5    the parties' agreements.  It does not -- not -- and this is one

6    of the things interrogatory number 2 seeks -- it does not state

7    who has information about the factual allegations in the

8    complaint concerning the operation of Ohr Somayach and the

9    conference center.

10        For example, the counterclaims avere that the

11   conference center is left vacant, that it's rented out

12   commercially and things of that nature.  We want to -- the

13   plaintiff wants know who gave the information upon which the

14   counterclaims are based.  There are all these allegations as to

15   the school's operation of the conference center, and we want to

16   know where those allegations came from.

17        MR. FISCHER:  Judge, that's a different question.

18   That's a different question and one that plaintiff hasn't asked

19   us.  We provided information with respect to the initial

20   disclosures about who we understood had relevant information as

21   to the allegations in this case and we listed -- we listed

22   people in response.  That was submitted back in February to

23   plaintiff's counsel.  We never heard anything about that being

24   deficient until right now.

25        What I think plaintiff is asking for in number 2 is

20207bmcr

1    something very different than who has factual information

2    regarding this case, which is what we tried to provide to him

3    back in February, along with, you know, addresses and names

4    where we had those available to us.  If we didn't have those,

5    then we didn't have them.  But what I think plaintiff is asking

6    and the problem with interrogatory number 2 is that it's asking

7    for who provided factual information upon which your first two

8    counterclaims in this action are based.  That gets to a

9    different issue, one that's not relevant and beyond the simple

10   issue of who has relevant -- who we believe, excuse me, has

11   relevant factual information.

12           MR. PROMAN:  Your Honor, the plaintiff believes that

13   the Kiruv allegations are entirely false, fabricated and

14   fictitious made in order to undermine a rabbinical tribunal

15   ruling that resulted in Mr. Shvidler's and Mr. Matlin's guy,

16   Avraham Braun, no longer being part of the school.  That's

17   what's going on here from a broader perspective in the

18   plaintiff's view.  There is a rabbinical tribunal ruling.

19   Rabbi Braun is out.  That was Mr. Shvidler's guy.  That was --

20   Rabbi Braun -- that was Mr. Matlin's guy.  And notwithstanding

21   more than ten years of the conference center's use, once Rabbi

22   Braun is out, boom, all of a sudden all these allegations are

23   made about the conference center's operations.

24           In Farleigh's document production, there is not a

25   single sentence from Mr. Shvidler in any of the documents.

1   There is not any internal correspondence involving Mr. Matlin

2   in any of the documents.  All these allegations are made.

3   Isn't it only appropriate that the plaintiff be entitled to

4   know where those factual allegations came from?  Right now, the

5   plaintiff doesn't know that.  We have all these allegations as

6   to how the conference center is used, as to a Kiruv restriction

7   that doesn't exist.  We want to know what is the basis for

8   those allegations, including, as interrogatory number 2 asks,

9   where those alleged allegations -- where those allegations

10  regarding Kiruv, the conference center's operations, et cetera,

11  where those allegations came from.

12          THE COURT:  The difficulty that I have, Mr. Proman,

13  with the way your interrogatory is phrased is that it does

14  appear to me as though you are seeking what is most certainly

15  attorney work product, and I have difficulty with that.  You

16  aren't asking where the facts came from.  You're asking where

17  the information placed in the pleadings came from.  And I think

18  those are two different questions.  You should start with

19  depositions.  Try to find out.  If you can't find out, then

20  we'll go from there.  But, although the objections are

21  inadequate, I'm going to sustain my objection, which is that

22  the interrogatory is poorly phrased.

23          MR. PROMAN:  Your Honor, may I ask a question about

24  that?

25          THE COURT:  Yes, of course.

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1          MR. PROMAN:  In the interrogatory, it doesn't intend

2     to ask for work product, and I don't think it does because it

3     says identify all natural persons providing alleged factual

4     information.  It refers to facts, not work product.

5          For example, if there's an e-mail from Mr. Matlin to

6     Mr. Shvidler saying so and so at Ohr Somayach told me that the

7     conference center's empty, that's a fact that I think the

8     plaintiff is entitled to know.  And interrogatory number 2

9     limits itself to alleged factual information.  That's the exact

10    words in the interrogatory; not work product, but facts, facts

11    upon which factual allegations are made.

12         THE COURT:  I understand that's what you intended.  I

13    don't believe that's the way it reads.  And so I think you need

14    to pursue this in appropriate depositions.

15         With regard to number 3, I also think that

16    depositions are the appropriate way to learn this information.

17    I understand you disagree with me, but we definitely need to

18    move forward.

19         Now, I'm also looking at Mr. Fischer's letter

20    responding to the letter -- Mr. Proman's letter of July 6th,

21    and that is in part the letter dated July 13th, which is docket

22    entry 42.  I think I've dealt with those issues.

23         And again, as I mentioned earlier, Mr. Fischer stated

24    here Farleigh has not withheld any documents from production

25    based on any of its general objections.  Of course, general

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1    objections are meaningless and, of course, you're required to

2    say in your responses whether anything is being withheld.

3              The whole point is to let the other side know if

4    there's something to fight over.  If nothing has been withheld,

5    then there's nothing to fight over.  But by the size of the

6    pile in front of me, it's clear to me that you folks are going

7    to fight over everything, which is why you have to abide by the

8    rules.

9              MR. FISCHER:  Your Honor, I apologize for any

10   confusion on our end.  We have had a number of meet and confers

11   with Mr. Proman, so not every issue has been brought to your --

12   has been brought to your attention.  But we have produced all

13   responsive documents in regards to the discovery requests that

14   Mr. -- the first discovery request that Mr. Proman issued.  I

15   know he is working to produce documents responsive to our

16   requests.  That production is not complete yet.  But we have

17   done that, and I want the Court to know that.

18             Judge, might it be -- and I understand -- I

19   understand your Honor's position on this, and maybe it is -- it

20   might make sense for the benefit of the record in this case if

21   we reissue our responses and objections in connection with

22   this, with your Honor's rulings, taking them very closely to

23   heart.

24             THE COURT:  Mr. Proman.

25             MR. PROMAN:  A few things, your Honor.

1          Number one, I would like to state for clarity, in the
2     event it's needed, that the plaintiff's responses and
3     objections to Farleigh's document requests and interrogatories
4     did not -- not -- not -- include any general objections.  I'm
5     not sure your Honor necessarily stated otherwise.  And I think
6     what your Honor said about general objections may apply only to
7     Farleigh because only Farleigh included them.  But just in case
8     there was a misunderstanding, I would like to state that the
9     plaintiff did not assert any -- zero -- nothing -- not a
10    zilch -- no general objections at all.  So I think that the
11    plaintiff was in compliance with the Federal Rules and the
12    uniform rules in that regard.
13          Likewise, as far as the definitions contained in the
14    uniform -- contained that are applicable to all discovery
15    requests, I believe the plaintiff -- and I want to say this
16    just in case it's unclear -- I believe the plaintiff used only
17    the uniform definitions.  Typed them out, but typed out what's
18    exactly in the rules.  And I think additional definitions
19    unique to a case are allowed.  For example, I think there is a
20    definition defining deed as the deed of gift.  So I think the
21    plaintiff complied with all the rules your Honor had talked
22    about.  And your Honor may not have intended to state
23    otherwise, but I would be remiss if I just didn't say what I
24    just said for clarity purposes.
25          Now, as far as the plaintiff's document production,

1    the plaintiff has made an initial production and it will

2    complete its production shortly.  There were a lot of materials

3    to look through.  Remember, we're talking about conduct that

4    goes back many years.

5              Now, as far as Farleigh's production, I think it's

6    important to advise your Honor of a couple things.

7              Number one, it totaled 350 pages.  More than half of

8    those pages did not consist of information that the defendant

9    has that the plaintiff doesn't have.  What I'm getting at is

10   more than half the documents consists of the plaintiff's

11   documents, Ohr Somayach's documents.  For instance, when

12   there's an event at conference center, let's say a rabbi is

13   giving a lecture about topic X, religious topic X, there's

14   often a flier produced about that.  Sometimes there's an annual

15   dinner.  Sometimes there are other fliers that discuss what has

16   happened at the conference center.  That's more than half of

17   Farleigh's production, stuff that are actually Ohr Somayach's

18   documents that Farleigh then produced over to us because it had

19   them.

20             I should inform the Court that Mr. Matlin was a

21   former student at the school just like Mr. Shvidler.

22   Mr. Matlin, just like Mr. Shvidler, has been a donor to the

23   school while Rabbi Braun was there.  Mr. Matlin, around 2017,

24   was still very much involved with the school, including because

25   of personal hardships, family losses that occurred, and there

```
1    were events mentioned in Ohr Somayach's publications to help
2    Mr. Matlin through that time.  What I'm getting at is
3    Mr. Matlin has been involved with the school for quite some
4    time and that would explain how he has all those fliers from
5    Ohr Somayach, which is more than half of Farleigh's production.
6              The important thing I want to convey, however, is
7    that the plaintiff essentially has no discovery as to the
8    counterclaim allegations.  We know what our fliers are.  What
9    we want discovery as to is the plaintiff's allegations, and
10   there's not a single -- as I said before -- not a single -- and
11   I said in my letter, not a single sentence from Mr. Shvidler in
12   any of the documents and not any internal correspondence
13   involving Mr. Matlin.  We have no information in those
14   documents concerning the other side's allegations and facts.
15   And I think it's important for the Court to know that and for
16   the Court to fashion a way forward so that we do get internal
17   correspondence on the defendant's side and things of that
18   nature so we could understand the basis for the factual
19   allegations regarding Kiruv and the conference center's use
20   that, from the plaintiff's point of view, is made up and
21   fictitious, and it's very problematic --
22              MR. FISCHER:  Your Honor, I would appreciate --
23              MR. PROMAN:  -- in the case.
24              MR. FISCHER:  Your Honor, I would appreciate if
25   Mr. Proman could stop calling our claims, which have been
```

1    subscribed to by an affidavit by Mr. Shvidler, as made up and

2    fictitious.

3            To address Mr. Proman's comments and to be very clear

4    about it, we have produced --

5            THE COURT:  I'm going to stop you.  I need to stop

6    you both.  I need to stop you both.  I'm not making any

7    ultimate decisions here.

8            MR. FISCHER:  Understood, Judge.

9            THE COURT:  These are simple discovery disputes.

10   Simple discovery disputes.  We don't need to go on and on and

11   on.

12           Fortunately, I've set aside substantial time for

13   today's conference because I got the feeling that counsel could

14   not engage in the kind of cooperation that Rule 1 requires, but

15   we don't have all day.

16           Let me be clear about something.

17           Eric, please put this in the memo to the docket

18   clerk.

19           Documents which are not provided in discovery will

20   not be permitted for use at trial or on summary judgment,

21   except for rebuttal purposes.

22           Look, going back to 26(a)(2) -- sorry --

23   (a)(1)(A)(ii), a copy or a description by category and location

24   of all documents, electronically stored information and

25   tangible things that the disclosing party has in its

possession, custody or control and may -- not will, but may --
use to support its claims or defenses have to be identified in
your initial disclosure.

So I don't know what we are arguing about on either
side.  All of this should have been produced, and if it wasn't,
then shame on you.

MR. FISCHER:  Judge, just to make -- sorry to
interrupt.  I didn't mean to interrupt.

THE COURT:  Go ahead.

MR. FISCHER:  I was just going to get back to Rule 1.
Per your Honor's suggestion and to make this as simple and
efficient as possible, on behalf of Farleigh, we have produced
all responsive documents that we have located.  We have
conferred with Mr. Proman.  We have heard his objection -- we
have heard his -- what he said earlier about whether there are
additional documents.  As we made clear in the letter, we made
clear to Mr. Proman, we are working in good faith to determine
whether there are any additional documents that are responsive,
and we hope to have completed that review soon, hopefully as
early as the end of this week, but we have heard them and, in
connection with meet and confers, we have engaged in that
process.  But, for right now, we have produced all the
documents that we have identified that are responsive.  So we
are actually working cooperatively to try to address this issue
offline.

202071bhfcf

1          THE COURT:  I'm now looking at Mr. Fischer's letter

2     of July 6th.  So it's document number 38.  Once again, I don't

3     know what the big deal is about document request number 12.

4          Mr. Proman, this, as I see it, mirrors the initial

5     disclosure requirements that I just read to you in Rule

6     26(a)(1)(A)(ii).  You don't have to know with certainty what

7     you're going to use.  And, as with all discovery demands, they

8     must be seasonably updated when you become aware of new things.

9     Clearly you're going to decide I'm not going to use this, I am

10    going to use this.  Oh, look, a new document.  Maybe I'll use

11    this.  I better put that on an updated disclosure form.

12          I don't understand what document request 12 asks for

13    that you should not and I hope did produce under your initial

14    disclosure requirements.  You're not guaranteeing that you're

15    going to use it at trial.  You're not making a trial decision.

16    You're trying to determine whether you may use it.  And I

17    realize that the language of document request number 12 perhaps

18    is a bit more concrete than may, but I'm interpreting number 12

19    as being the same as the initial disclosure requirements,

20    things that you may use, that seems to support your claims and

21    defenses.  So what's the problem?

22          MR. PROMAN:  Your Honor, the problem is, as far as

23    the request as you describe it, is not a problem.  The

24    plaintiff viewed the request a little bit differently, but

25    we'll take your Honor's construction of it, which is not

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1    problematic.

2            The point is it did serve Rule 26(a) disclosures, and

3    the plaintiff has produced documents and will produce the rest

4    of the documents.  The plaintiff construed the request, as

5    stated in my letter, as a little bit -- just a little bit

6    differently, but as far as how your Honor construes it, we'll

7    take that.  Thank you.  And we appreciate the effort.

8            MR. FISCHER:  I guess my question, Judge, just to

9    follow up, and I appreciate this --

10           Is it, John, your position that we have those

11   documents?  Because I didn't --

12           And we can have this conversation offline, Judge.

13   I'm happy to be efficient with the Court's time.

14           But I just want to make sure that I'm not missing

15   anything because I don't think your objection's noted that we

16   already have them.  So I just want to -- is it your position

17   that we're already in possession of them or that they will be

18   produced?

19           MR. PROMAN:  Both.  The plaintiff made an initial

20   production, as you and I have spoken about, and it will make a

21   supplemental production shortly, and then you'll have

22   everything.  And the that we spoke about before reference I

23   think segues into something else that I think is useful for the

24   Court to know.

25           I'm going to go out on a limb here, your Honor, and

1    speak jointly for myself and for Ben.  The letters may have

2    given a wrong impression.  Ben and I get along very, very well.

3    I think it's important for your Honor to know that.  We're not

4    at each other's throats.  We've had a number of constructive

5    conversations, and the tone of those conversations never, never

6    include anything that may have -- that may be involved in what

7    may be a misimpression to the Court based on the letters.  We

8    do work together.  We're not at each other's throats.  I don't

9    think either side intended the letters to your Honor to state

10   things differently or to state anything other than

11   disagreements that we felt needed the Court's resolution.

12          I'll turn it over to Mr. Fischer, but insofar as

13   there is a misimpression that we're not working together in the

14   spirit of Rule 1, we are.  In fact, Mr. Fischer I find has been

15   very professional and very open and easy to work with, and I

16   would like to think he thinks the same of me, and I'm going to

17   go out on a limb again and say that he does.

18          So I just wanted to let the Court know that,

19   actually, what's going on when your Honor is not here is what I

20   think your Honor would expect.  I just say that so hopefully

21   the Court feels a little bit better about the case and better

22   about the parties and better about the counsel as well.

23          MR. FISCHER:  No objection, Judge.

24          No.  Mr. Proman is right.  We have had -- we're

25   basically in what I view as constructive meet and confers

 1    several times a week.  We have avoided, I think, bringing a

 2    number of issues to the Court's attention through those meet

 3    and confers.  I think our goal is to still do that.  And there

 4    are some other issues that are potentially in the hopper that

 5    we're looking to try to resolve.  So, yes, I agree with John in

 6    that regard and appreciate those comments.  And we have been

 7    working professionally and constructively through the discovery

 8    process to try to very much narrow the issues that we are

 9    bringing to the Court's attention.  So that I do think that is

10    helpful for the Court to understand.

11              MR. PROMAN:  One other thing that --

12              THE COURT:  I am indeed very glad to hear that.

13    That's not the tenor of your letters at all.  And my law clerk,

14    who has also reviewed the letters, is sitting here nodding her

15    head at me.  She agrees.  That's not the tenor of your letters.

16    Your letters make it appear that you are disagreeing about

17    absolutely everything.

18              MR. PROMAN:  Your Honor -- I'm sorry, your Honor.

19    You were saying?

20              THE COURT:  No.  I was going to invite you to speak.

21              MR. PROMAN:  Your Honor, this is John Proman for the

22    plaintiff.  That's just not the case at all.  I didn't contend

23    for any of my letters to convey that, and I don't think

24    Mr. Fischer did, either.  It's just not the case at all.  We've

25    been working together closely, I think effectively.  And I

202075hirt

 1    guess we'll -- I guess I, at least, and I think Ben will do the

 2    same, keep your Honor's comments in mind when we do the

 3    drafting in advocacy in the letters.  So that's all I have to

 4    say on that point.  Thank you.

 5              Ben, anything further?

 6              MR. FISCHER:  We'll do the same.

 7              MR. PROMAN:  Your Honor, there is one thing I was

 8    hoping to go back to, please, your Honor, that you talked about

 9    earlier.  You mentioned and I think your words were someone

10    hasn't produced something, shame on you, and I'm just wondering

11    what your Honor means by that.

12              What the plaintiff would like to have is internal

13    correspondence from Farleigh, and if there is none, an express

14    statement that there is none and maybe even an appropriate

15    explanation as to why there isn't any.  And when we were

16    touching upon that a little bit earlier, I think your Honor

17    said if somebody hasn't produced something, shame on you, but

18    the plaintiff is just a little unsure of what that means and

19    would ask for a little bit more than just shame on you.

20              What the plaintiff would want is the actual internal

21    correspondence or an express statement why there is none and

22    maybe an explanation as to why there is none.  Because when

23    allegations are made that are rather substantial, I think that

24    those things given to the plaintiff, the documents themselves,

25    are a statement that there are none and an appropriate

1    explanation why are important for the plaintiff to have.

2            MR. FISCHER:  Judge, just to address that -- sorry.

3    I was just going to maybe try to constructively address that.

4            THE COURT:  Go ahead.

5            MR. FISCHER:  You know, in terms of the -- thank you,

6    your Honor.

7            You know, I think both Mr. Proman is engaged in his

8    continued and ongoing review for potentially responsive

9    documents, and we are, at least with respect to a more limited

10   number of his requests, doing the same.  I think if we get to

11   the point, Judge -- or when we get to the point, not if -- when

12   we get to the point when we have completed that review -- we,

13   I'm now speaking just for Farleigh -- we will certainly come

14   back to Mr. Proman and say either there are no responsive

15   documents or there are some responsive documents, here they

16   are.  And we have done that already with other categories of

17   documents.

18           I think what -- you know, the issue of why I guess --

19   and maybe this is something that John and I can work out

20   offline, but the issue of why to me seems potentially more like

21   an issue that could be raised at a deposition to the people who

22   Mr. Proman is alleging were communicating, but didn't

23   communicate.  In other words, did you communicate about this

24   issue via e-mail is an appropriate question if we are making --

25   if we are making the representation that there were no

1    responsive documents to a particular request.

2                So the why to me seems like it might be a hard

3    conversation, a hard answer for the lawyers to make.  It's an

4    easier answer, potentially, for the witnesses to make because

5    it's a factual issue.  So I just throw that out there.

6                Maybe we can deal with this offline, John, since it's

7    a little premature since we're both still doing work on our

8    respective ends.

9                THE COURT:  In response, Mr. Proman, to your concern

10   that my shame on you is not specific enough, I also said

11   documents not produced during the course of discovery may not

12   be used in support of or defense of summary judgment and may

13   not be used at trial, except in an unexpected fashion;

14   essentially, in rebuttal.  So I don't know how much stronger I

15   can get than that.  Shame on you is my own personal

16   observation.  It has no legal significance.  But you may not

17   use such documents is pretty significant.  And Mr. Lynch is

18   putting it in the memo to the docket clerk, so you will have

19   that in writing and available for your use.

20               I do believe that -- and I don't -- let me just make

21   one other observation.  I encourage counsel to continue to work

22   together.  You're telling me -- it's not obvious to me, but

23   you're telling me that you're working well together, that

24   you're incorporating the spirit of Rule 1 in your engagements

25   and your litigation, and I'm delighted that that is your

1    approach.

2          But, Mr. Proman, if you think at some point that the

3    counterclaims or defenses are baseless, you can always seek

4    Rule 11 sanctions.  That's what the rules permit.

5          MR. PROMAN:  Thank you, Judge.

6          THE COURT:  That's all I'm going to say on that at

7    this point in time.

8          I do think that I've resolved Mr. Fischer's letter of

9    July 6th.  The second half of that letter had to do with the

10   interrogatories, which I've already addressed.  So this brings

11   us -- this takes us to Mr. Proman's letter of July 15th.  I'm

12   not sure there was an opposition to this.  At least, if there

13   was, I haven't received it yet.

14         Mr. Fischer, was there an opposition to Mr. Proman's

15   July 15th letter?

16         MR. FISCHER:  Judge, the short answer is not yet.  By

17   our count, under your order, our opposition to that letter is

18   due tomorrow, being the fifth business day.  So it would be

19   coming tomorrow, being filed electronically.

20         Judge, we could either talk about the issues, because

21   I'm aware of them, but if your Honor would indulge us, we can

22   write the Court a short two-page letter on it, which we would

23   obviously would be prepared to file tomorrow.

24         THE COURT:  That's fine.

25         I do want to make sure that these and any other

1    issues that may arise get resolved promptly, so I would like to

2    put you on for a conference two weeks from today to make sure

3    that this and any other issues that may arise are dealt with.

4    How's Tuesday, August 4 at 11:45 for a phone conference?

5              MR. FISCHER:  Good for me.

6              MR. PROMAN:  Your Honor, Tuesday, August 4th at 11:45

7    works for the plaintiff as well.

8              THE COURT:  Excellent.

9              Now, what's the story with regards to scheduling

10   depositions?

11             Mr. Proman?  Has anything been scheduled?

12             MR. PROMAN:  No, there hasn't, your Honor.

13             Under your prior June 18th directives, no depositions

14   were scheduled to occur until August 3rd and none have been

15   scheduled.  The plaintiff's thoughts on that are two things.

16             Number one, we would like all documents to be

17   exchanged before depositions occur.

18             Number two, we think that it makes sense to await

19   hearing from Judge Halpern before depositions occur because,

20   right now, discovery is limited in terms of its scope, and I

21   don't think it makes sense to have depositions once when there

22   are limitations in effect and then have to do another round of

23   depositions in the event there aren't limitations in effect.

24             And number three, we're hoping that Judge Halpern may

25   decide the dismissal motion, the motion to dismiss the

1    counterclaims, shortly.  Because I know his Honor expressly

2    stated on May 7th that he wanted to have those motions resolved

3    promptly and was doing things on a prompt schedule for the

4    plaintiff's benefit.

5          So the plaintiff's suggestion would be to see what

6    happens when August 4th comes around, and maybe we could

7    discuss where we are then.

8          MR. FISCHER:  Judge, if I may for a moment.

9          THE COURT:  Go ahead.

10         MR. FISCHER:  So we are in agreement with Mr. Proman

11   on the issue of waiting for depositions until the production of

12   all the responsive documents.  And it may make sense at the end

13   of this discussion for the parties to give the Court a sense of

14   when that's going to be.  But we agree with that.

15         I think we would disagree -- and I don't -- and John

16   and I have not -- Mr. Proman and I have not had this discussion

17   offline yet about his proposal regarding awaiting depositions,

18   but I think where we would disagree would be to await

19   depositions pending a ruling.  I think that issue was, in our

20   minds, raised with Judge Halpern, and he contemplated discovery

21   going forward and depositions going forward even if there was a

22   pending motion.  And that's reflected in the case management

23   order by which he scheduled certain deadlines for the

24   completion of depositions and for the completion of fact

25   discovery in mid to late September.

1          So, look, this may be one where we need to have a --

2     Mr. Proman and I need to have a conversation before it's

3     properly keyed up for the Court.  We could discuss it in two

4     week's time.  But I think, you know, that would be our

5     respectful disagreement on this point.

6          THE COURT:  Okay.

7          MR. PROMAN:  Your Honor, one piece of background.

8          THE COURT:  I'm sorry, Mr. Proman.  I just need to

9     interrupt.

10          Mr. Fischer, maybe I anticipated what I thought you

11     were going to say and then you didn't say quite what I

12     anticipated.  Can you just tell me again what your position is

13     with regard to whether they should be -- whether the

14     depositions should be -- I'm not sure -- held off on or -- I'm

15     not clear what your position is, Mr. Fischer.

16          MR. FISCHER:  Sure.  I'm sorry, Judge, if I wasn't

17     clear.

18          So I think I would address that by saying -- I would

19     address that in two parts.

20          The first part is I agree with Mr. Proman that we

21     should not start depositions until the parties have finished

22     producing documents.  And we can talk about when that's going

23     to be.  I think we anticipate -- we, being Farleigh, anticipate

24     our production being done soon.  And we can certainly report

25     back to the Court on that at the next conference in two week's

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1    time.  So that's number one, which is, yes, let's hold off on

2    depositions until all the parties have all the relevant

3    documents.

4              The second part, I think what Mr. Proman is saying is

5    sort of let's hold depositions generally in abeyance while the

6    Court decides his motion to dismiss, which has been pending I

7    believe since June, and my reaction to that is I don't think we

8    should hold them off until the Court decides that motion or

9    make other rulings because that's an issue, Judge, that we

10   already addressed with Judge Halpern back in May when Judge

11   Halpern understood that plaintiff was making the motion to

12   dismiss -- understood that plaintiff was making a motion to

13   dismiss and, notwithstanding that fact, still scheduled -- or

14   still ordered a discovery schedule that contemplated

15   depositions proceeding during that period.

16             Does that clarify the question for your Honor?

17             THE COURT:  Yes, it does.  Thank you.  I think I

18   wasn't listening as carefully as I should have been.

19             Mr. Proman, you wanted to respond.

20             MR. PROMAN:  Yes.  Not necessarily -- not to respond

21   per say, but to provide factual information to the Court that

22   may be pertinent to your Honor's thinking through the parties'

23   positions.

24             The case management order was prepared before the May

25   7th conference pursuant to Judge Halpern's rules applicable to

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

```
1    any case.  And that case management order was prepared under

2    the form -- I'm not sure that's the best word, but I'll use

3    it -- the form and time frames -- I'll say form time frames

4    required in Judge Halpern's individual rules.  So counsel put

5    together the proposed case management order before the May 7th

6    conference happened and while the parties' differing views as

7    to discovery happening at all pending the dismissal motion and,

8    if so, the scope of discovery while the motions are pending.

9    The order was drafted while those disputes were in letter form

10   to the Judge, but not yet decided by the Judge.

11              So what I'm getting at is the order that was signed

12   is a form, including form time frames, that the parties were

13   required to submit by a certain time under the Judge's form

14   rules, before the May 7th conference occurred, that addressed

15   the concurrence of letter submissions as to whether discovery

16   should occur at all and the scope thereof.

17              So the point I'm driving at is the case management

18   order that was signed and the very strict time frames in it are

19   a form time schedule from Judge Halpern's individual rules.

20   The time frame may have been adjusted slightly, but it's true

21   to the form for the most part and was done with the intent of

22   doing what the individual rules direct, complying with the

23   form.

24              What I'm equally trying to drive at is, on the May

25   7th conference, there's no discussion about depositions and the
```

1    interplay between limited discovery that Judge Halpern directed

2    and the form content of the form case management order.  The

3    case management order I think just cannot be properly read as a

4    reflection of any merits decisions -- any merits decision by

5    Judge Halpern and isn't a reflection of even a merits

6    consideration by Judge Halpern because it was a form prepared

7    before Judge Halpern made the discovery considerations that he

8    did.  So I don't think the case management order's content,

9    time frame, anything reflects what was ultimately decided on

10    May 7th by the Judge.  And I certainly don't think the Judge

11    intended to have two sets of depositions, one while there are

12    the scope limitations that the Judge directed and one

13    afterwards.

14          So I just wanted to provide some background as to the

15    case management order in order to inform the Court that it's

16    basically a form, including form time frames, and how that came

17    to be and that it doesn't reflect the merits consideration,

18    much less merits determination of any discovery issue.

19          THE COURT:  All right.  What I'm going to do is I'm

20    going to confer with Judge Halpern and I will either issue a

21    written order or we will discuss it again in two weeks.  I'm

22    concerned that if depositions are to begin in August, they need

23    to get scheduled, especially with some of these folks who may

24    have health issues and may need to have extraordinary

25    arrangements made for their depositions.  So I will deal with

1    that sometime in the next day or two.  And if you don't hear

2    from me, then we'll discuss it again the next date.

3              MR. FISCHER:  Yes.  And, Judge, we appreciate that.

4    And there may be some -- I believe there is, because I'm

5    looking at it right now, but there's relevant language in the

6    May 7th conference before Judge Halpern on this issue that we

7    could point you in the direction of that we think is relevant

8    to our position that depositions should move forward pending

9    the motion to dismiss.  But we appreciate your Honor looking

10   into it.

11             THE COURT:  All right.

12             What else do we need to talk about today?

13             Mr. Proman.

14             MR. PROMAN:  I think that's it, your Honor.  Thank

15   you very much for your time and consideration.

16             THE COURT:  Mr. Fischer?

17             MR. FISCHER:  Just two quick ones for me, Judge.

18             I think there's the open issue of serving the revised

19   responses and objections, which I think would be very helpful

20   to help clarify the record and understanding your Honor's

21   comments.  I think that we could get that done pretty quickly,

22   and I think it would be helpful.

23             THE COURT:  You're free to do that.

24             MR. FISCHER:  Great.

25             THE COURT:  You said two things.

202071bhici

```
1              MR. FISCHER:  My guess is we could get that done by
2      the -- we could get that to you, John, by the end of this week.
3              And then the second issue, your Honor, just in terms
4      of the status of document production --
5              Mr. Proman, John, do you have a sense whether you
6      will be completed with your -- do you anticipate being
7      completed with your production by the next status conference?
8              MR. PROMAN:  Yes.
9              MR. FISCHER:  Great.
10             Same for us, Judge.
11             THE COURT:  Good.  Good.
12             All right.  Terrific.  I will speak to you then, in
13     two weeks.  I hope everyone remains safe and healthy.
14             MR. FISCHER:  Thank you, your Honor.  We appreciate
15     your time and effort.
16             THE COURT:  Thank you very much.
17             MR. FISCHER:  Take care.
18             MR. PROMAN:  Thank you, your Honor.
19
20                              ----
21
22
23
24
25
```